Dorothy Ruth PAGE, Appellant,

v.

Van Ray HAMILTON, Respondent,

and

Asa Breckenridge Crowe, Appellant.

No. 47085.

Supreme Court of Missouri,

Division No. 2.

Nov. 9, 1959.

Opinion Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 14, 1959.

James F. Koester, St. Louis, for Page, Joseph W. Toeniskoetter, St. Louis, of counsel.

Evans & Dixon, John C. Shepherd, St. Louis, for Crowe.

STORCKMAN, Judge.

This is a personal injury action arising out of a collision of automobiles in which the jury returned a verdict in favor of the plaintiff and against both defendants in the sum of $26,500 and in favor of defendant Crowe for $3,500 on his cross-claim against the defendant Hamilton. The defendant Crowe filed a motion for judgment in accordance with his motion for a directed verdict or, in the alternative, for a new trial on plaintiff's cause of action. The defendant Hamilton filed no aftertrial motion. From a memorandum of the court, it appears that defendant Hamilton's insurance company went into receivership and his counsel withdrew. He is not represented in this court.

Within thirty days after verdict and judgment, the trial court overruled the motion of defendant Crowe for judgment but sustained his motion for new trial on the issue of liability on the ground that the finding for plaintiff against the defendant Crowe was inconsistent with the verdict in favor of defendant Crowe on his cross-claim against defendant Hamilton. On the court's own motion a new trial was ordered of defendant Hamilton's liability to plaintiff on her cause of action. Also on the court's own motion the verdict in favor of defendant Crowe on his cross-claim against defendant Hamilton was set aside and a new trial was ordered on the issue of liability. In each instance the finding of the jury on the issue of damages was not disturbed but was ordered held in abeyance pending a retrial of the liability issues.

The plaintiff and the defendant Crowe have both appealed. The plaintiff contends that the trial court erred in ordering a retrial of the liability issue of her action against the defendants Hamilton and Crowe because of the alleged inconsistency of the verdict. The defendant Crowe contends the court erred in the overruling of his motion for judgment in accordance with his motion for a directed verdict, in failing to grant a new trial upon the issue of plaintiff's damages as well as upon the issue of liability, and in failing to grant a new trial on the ground the verdict was excessive or in refusing to order a substantial remittitur. Defendant Crowe further contends that if the court should hold that the verdict is not inconsistent, as the plaintiff contends, then Crowe's judgment on his cross-claim against the defendant Hamilton should be reinstated.

■ The plaintiff has filed a motion to dismiss defendant Crowe's appeal. First she asserts that defendant Crowe did not file his transcript of the record on appeal within the time and manner provided for by §§ 512.130 and 512.140 RSMo 1949, V.A.M.S., and S.Ct. Rule 3.26, 42 V.A.M.S., and that his appeal should be dismissed

pursuant to Rule 1.30. The plaintiff and the defendant Crowe appealed on the same day and the transcript was filed in this court within the time as extended by the trial court on plaintiff's application. The plaintiff relies upon the fact that the transcript does not show that any extension of time was granted to the defendant. This contention is without merit.

Rule 1.04(c) provides: "Where more than one appeal is taken from the same judgment a single transcript on appeal shall be prepared and each appellant shall pay his share of the cost." Pursuant to this rule a single transcript was prepared and both parties shared the expense. The joint transcript was timely filed and it is immaterial that the defendant did not join in requesting an extension of time.

The plaintiff also alleges that the appeal should be dismissed because the defendant Crowe is not an aggrieved party within the meaning of the appeal statute, section 512.-020. This results, the defendant says, because defendant's motion for a new trial was sustained in part and the order holding the finding on the issue of damages in abeyance does not constitute a final judgment.

The cases cited by plaintiff, holding that a defendant cannot appeal from the overruling of his motion for judgment in accordance with his motion for a directed verdict in cases where his motion for new trial is sustained, are not applicable. Nor is Schneider v. St. Louis Public Service Co., Mo., 238 S.W.2d 350, which the plaintiff cites, of any help; the ruling in the Schneider case was reviewed and corrected in Lilly v. Boswell, 362 Mo. 444, 242 S.W. 2d 73, 77 [11]. The plaintiff has cited no case directly ruling the question she has raised. It appears, however, if her contention in this regard were correct, that her own appeal might be subject to the same infirmity.

Section 510.330 authorizes the grant of a new trial "on all or part of the issues after trial by jury, court or referee." Sec-

tion 512.020 permits any party aggrieved by any judgment of a trial court in any civil action to appeal, inter alia, from any order granting a new trial or from any final judgment in the cause.

■ A party cannot appeal from a judgment wholly in his favor, one that gives him all he asks; but he can appeal from a judgment which gives him only a part of the relief he seeks. Scott v. Parkview Realty & Improvement Co., 241 Mo. 112, 145 S.W. 48, 50 [2].

■ Where, on defendant's motion after an adverse verdict, the court grants a new trial on the issue of liability only or on the issue of damages only and overrules the motion in all other particulars, the new trial ordered is in effect on the court's own motion since it is one for which the defendant did not ask in his motion and one which the plaintiff did not seek, and the court's order constitutes an order granting a new trial under section 512.020 from which both the plaintiff and the defendant, as aggrieved parties, can appeal. Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 695 [5], 34 A.L.R.2d 972.

■ Other contentions in the motion to dismiss, which relate to the scope of review rather than the validity of the appeal, will be disposed of as they arise in the course of the opinion. The plaintiff's motion to dismiss the appeal of defendant Crowe is overruled.

■ Defendant Crowe's contention that he was entitled to a directed verdict in his favor on plaintiff's cause of action requires an examination of the evidence in that respect. Since charges of negligence not submitted to the jury are deemed abandoned, our determination is limited to whether the plaintiff made a case against the defendant Crowe on the humanitarian theory of negligence on which the case was submitted. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 323 [16]; Branstetter v. Gerdeman, 364 Mo. 1230,

274 S.W.2d 240, 245 [1]; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 785 [4]. More specifically defendant Crowe contends that the evidence is insufficient to establish that he could have avoided the collision with reasonable safety to himself and his passenger by slackening the speed of his automobile and swerving to his right after the plaintiff came into a position of imminent peril. Such evidence must be viewed in the light most favorable to the verdict. Allen v. Hayen, Mo., 320 S.W.2d 441, 442[1].

The automobile collision out of which the causes of action arose occurred February 17, 1957, about twelve miles south of Festus, Missouri, in Ste. Genevieve County, on U. S. Highway No. 61, a two-lane concrete pavement running generally in a north and south direction. The highway was quite level in that vicinity and without curves. The time was about 4:15 on a Sunday afternoon. The weather was clear and sunny, the visibility was good and the pavement was dry. The plaintiff was a passenger in an automobile owned by John Hamilton and being driven northwardly by his brother, the defendant Van Ray Hamilton. The owner John Hamilton was also a passenger in the car en route to St. Louis. The defendant Crowe was driving his automobile southwardly returning from St. Louis to his home in Charleston accompanied by his mother, Mrs. Harry Crowe. Just prior to the accident the Hamilton car was traveling at or near the rear of a line of northbound cars estimated to be from fifteen to twenty in number. The defendant Hamilton pulled out into the southbound lane in an effort to pass a car or cars ahead of him and the Hamilton and Crowe cars collided; the plaintiff and the defendant Crowe were among those injured. At least portions of the two cars were on the west shoulder of the highway when the impact occurred but their exact positions are disputed.

The plaintiff remembered none of the events bearing upon the question of liability.

The evidence in this regard was furnished mainly by the defendants Crowe and Hamilton and a member of the Missouri State Highway Patrol. Defendant Hamilton testified in substance that he was traveling 50 to 55 miles per hour when he came upon the line of cars proceeding northward at about the same speed. He pulled out into the southbound lane intending to pass the car ahead of him increasing his speed as he did so. He could see a quarter of a mile down the road but did not see any southbound car. When he was completely in the southbound lane, a Studebaker automobile, the second car ahead of him in the line, also pulled out but almost immediately turned back into the northbound traffic lane. Then for the first time Hamilton saw the Crowe car coming south about 300 to 400 yards ahead of him in the southbound lane. He estimated the speed of the Crowe car to be between 60 and 70 miles per hour. Hamilton testified that he immediately applied his brakes but could not get back into the northbound line of traffic. When the automobiles were about a hundred yards apart, Hamilton started to swerve to the west shoulder. He testified that he got his car completely off the pavement onto the west shoulder and traveled in that position for six or seven car lengths. When the automobiles were three or four car lengths apart, the Crowe car went towards the west shoulder for the first time. At that time Hamilton, having reduced his speed to about five miles per hour, turned the car sharply toward the west and the collision occurred. He testified that at the time of impact the rear of the Hamilton car was five or six feet west of the pavement and there was nothing to prevent the Crowe automobile from staying on the pavement and passing in safety.

Defendant Crowe testified that his top speed as he approached the scene of the accident was 60 to 65 miles per hour. He saw a Studebaker car pull out of the northbound traffic and he applied his brakes and reduced his speed to 40 to 45 miles per hour. The Studebaker pulled back into the northbound traffic lane when it was about 200 feet from him, and as it did so he observed the Hamilton car ahead of him in the southbound lane traveling at a very rapid rate of speed. When he first saw the Hamilton car it was separated from his automobile by a distance of 180 feet at the maximum. He immediately reapplied his brakes and swerved as quickly as he could toward the west shoulder. He had reduced his speed to five or ten miles per hour when the collision occurred. At the time the cars collided the right wheels of the Crowe automobile were off the pavement about one foot on the shoulder and the front of the Hamilton car was on the shoulder, but the back part was still on the pavement partially blocking the southbound lane so that defendant Crowe could not pass.

The highway patrolman, Herman A. Ellenberger, was called to the scene of the accident and found debris generally on the west shoulder two or three feet west of the western edge of the pavement indicating the point of impact. The Crowe car was headed south with its right side partially off the pavement. The Hamilton car came to rest 110 feet from the debris headed generally southwest and its left rear portion was thirteen feet from the western edge of the pavement. The western shoulder of the highway at that point and generally in that vicinity was about twelve feet wide. The patrolman measured the skid marks on the pavement in the southbound lane. Those laid down by the Hamilton car were 180 feet in length and those of the Crowe automobile fifteen feet. The officer testified to average stopping distances as follows: At 40 miles per hour 128 feet consisting of 44 feet reaction time and 82 feet braking distance; at 50 miles per hour 183 feet consisting of 55 feet reaction time and 128 feet braking distance; at 60 miles per hour 251 feet consisting of 66 feet reaction time and 185 feet braking distance. The evidence quite generally agreed that the collision damage was to the right rear side of the Hamilton car and to the right front end of the Crowe auto-

mobile. The testimony of other witnesses generally tended to corroborate various aspects of the testimony of the principal witnesses.

■ Defendant Crowe contends that the testimony of defendant Hamilton was so contrary to the testimony of all other witnesses and to physical facts and common experiences of men that the plaintiff should not be entitled to take advantage of such testimony, citing Fisher v. Gunn, Mo., 270 S.W.2d 869, and East v. McMenamy, Mo., 266 S.W.2d 728. Evidently the jury did not accept in toto the testimony of either of the defendants or else it would have exonerated one or the other. Even if we were at liberty to disregard defendant Hamilton's testimony as to the time and place of his going onto the west shoulder and the place of collision as being contrary to physical facts and common observations and experiences, we would still be confronted by the admitted situation that the two automobiles were bearing down upon each other in the same traffic lane with a barrier of automobile traffic on the one side and an unpaved shoulder on the other, the distance separating them at the time this was first discernible being the major fact in dispute. Defendant Hamilton says this distance was 300 to 400 yards; defendant Crowe says it was 180 feet at the most. If Hamilton was correct, or if the distance was substantially greater than the estimate of defendant Crowe, then it reasonably appears that either or both of the drivers had an opportunity to slacken the speed of the automobiles and to take evasive action that would have avoided the accident. Into the equation we must read the evidence of the physical fact that the Hamilton car skidded 180 feet while the automobile of defendant Crowe skidded only fifteen feet. We cannot take this and the other related factual determinations from the jury. The evidence made a submissible case and the trial court did not err in refusing to direct a judgment for the defendant Crowe. Nelms v. Bright, Mo., 299 S.W.2d 483, 490.

As respondent the defendant Crowe asserts that the grant of a new trial is also justified because of an error in Instruction No. 3, a verdict directing instruction on the humanitarian theory of negligence, given on behalf of plaintiff with respect to her action against the defendant Crowe. The defect complained of is that the usual qualifying phrase, "with the means and appliances then and there at hand, and with safety to himself and all other persons there or thereabouts," appears ahead of the hypothesis that the defendant could have seen the plaintiff in a position of peril instead of following it and preceding the finding that the defendant could have avoided the collision by slackening the speed of his automobile and swerving it. The same defect appears in Instruction No. 1 given on plaintiff's behalf and directing a verdict against the defendant Hamilton. The elements are all present in the instruction but are in the wrong order.

■■ The defendant correctly contends that the humanitarian doctrine does not require him to avoid injuring the plaintiff unless it can reasonably be done with the means at hand and without injury to himself and others. Pennington v. Carper, Mo., 309 S.W.2d 596, 601 [7, 8]. The question is whether the misarrangement of elements of the instruction deprives him of his right to have the jury so informed. The phrase obviously has nothing to do with defendant's ability to see the plaintiff in a position of imminent peril. The position of the phrase in the instruction does not prevent its qualifying the defendant's duty to slow and swerve his automobile, although it does render the proper understanding more difficult and should be avoided. However, on the present record it does not appear that the jury was misled; hence, prejudicial error has not been established.

Whether this verdict is self-destructive and must be set aside on the ground that it is inconsistent and illogical is a question beset with difficulty. The verdict represented a finding on three separate causes of ac-

tion. The plaintiff sued the defendants, Hamilton and Crowe, as joint tortfeasors and the defendant Crowe filed a cross-claim against the defendant Hamilton. The verdict returned is a single document consisting of two paragraphs. In the first paragraph the jury found "the issues herein joined" in favor of the plaintiff and against both defendants and assessed plaintiff's damages; the second paragraph found "the issues herein joined" in favor of the defendant Crowe on his cross-claim against the defendant Hamilton and assessed Crowe's damages.

The trial court in its memorandum posed the question for determination in this fashion: "Is the verdict of the jury, finding in favor of plaintiff and against defendant Crowe as well as defendant Hamilton, inconsistent with the same verdict in its finding in favor of defendant Crowe and against defendant Hamilton on Crowe's cross-claim?" The plaintiff submitted her case against the defendants on the humanitarian theory of negligence. Her Instruction No. 3, directing a verdict against the defendant Crowe, required the jury to find, among other things, that Crowe could have avoided the collision by slackening the speed of his automobile and swerving to his right. Defendant Crowe's Instruction No. 11, directing a verdict against his codefendant, submitted primary negligence on the part of Hamilton in that he failed to drive his automobile as close to the right side of the highway as practicable. However, a contributory negligence instruction, No. 12, given on behalf of defendant Hamilton, required a finding in Hamilton's favor on defendant Crowe's cross-claim if the jury found, among other things, that defendant Crowe could have seen defendant Hamilton's automobile enter the southbound lane of travel in time thereafter to have avoided the collision by slackening and swerving his automobile to his right.

The trial court held that the two portions of the verdict were inconsistent because the negligent act which the jury was required to find in order to return a verdict for the plaintiff against defendant Crowe under Instruction 3 also constituted contributory negligence with respect to Crowe's cross-claim against the defendant Hamilton under Instruction 12. The court concluded that the two portions of the verdict were inconsistent and that the verdict should be set aside as to liability. In doing so the trial court relied upon McGuire v. Southwestern Greyhound Lines, Inc., Mo. App., 291 S.W.2d 621, apparently the only Missouri appellate court decision on the subject. In concluding its memorandum the trial court stated that the plaintiff might be well-advised to move for a trial of her cause of action against the defendants separate from the trial on the cross-claim. This points up one of the perplexing questions of the case; that is, whether a result, legally acceptable when achieved by different verdicts in separate trials on the same set of facts, becomes erroneous because of inconsistency when accomplished by a general verdict in a single trial of separate causes of action joined in the same suit by authority of section 509.460 RSMo 1949, V.A.M.S.

In McGuire v. Southwestern Greyhound Lines, Inc., Mo.App., 291 S.W.2d 621, followed by the trial court, the plaintiff McGuire sued Greyhound and Blackburn claiming that a passing bus forced his automobile into the side of a bridge causing him to stop and be struck by Blackburn's automobile which was following, but being driven too fast and too close to plaintiff's car. Blackburn filed a cross-claim against the bus company. The plaintiff recovered against both of the defendants and Blackburn recovered on his cross-claim against the bus company. Plaintiff's judgment was satisfied and the bus company alone appealed claiming that the negligence which the jury was required to find in order to return a verdict against Blackburn on plaintiff's cause of action was the same that operated as a defense of contributory negligence to Blackburn's cross-claim against the bus company. The court of appeals agreed

and held that the finding in favor of the plaintiff against Blackburn and the finding in favor of Blackburn against the bus company on his cross-claim were inconsistent. The judgment on the cross-claim was reversed. The opinion further states, 291 S.W.2d 623 [5]: "It is, of course, true that where there are two inconsistent findings there is no priority between them and both are bad, but to take advantage of this the whole case must be subject to review. Had Blackburn appealed from the judgment against him a retrial of both the plaintiffs' case and the defendant's cross claim should have been ordered." The cases cited as authority in the McGuire opinion are those where an employer and employee are joined as defendants and the employer's liability depends upon the doctrine of respondeat superior. In such a case a finding of liability against the employee is a necessary link in a finding against his employer and a verdict exonerating the employee brings into question the liability of the employer. That sort of authority does not reach the precise question here involved. The McGuire case does not discuss the influence of § 509.460 upon the "consistency rule." In the present case defendant Crowe created at least in part the inconsistency of which he now complains by his filing and submission of his cross-claim against Hamilton, but that does not dispose of the rule broadly stated and applied in the McGuire case.

What constitutes inconsistency in a verdict and to what extent it is fatal is a question to which there appears to be no well-defined answer. In 53 Am.Jur. 725, Trial § 1048, we find this statement: "That a verdict must be consistent appears to be a principle not often squarely decided, at least so far as civil actions are concerned, but rather one that has been generally assumed." It does not appear that this court has dealt directly with the matter with which we are called upon to decide in this case. Downing v. Dixon, Mo., 313 S.W.2d 644, 652 [15, 16] had occasion to refer to without deciding the consistency of issues presented by cross-claims, but the validity

of a verdict was not involved. The filing of the cross-claim in this case is specifically authorized by section 509.460, which provides in part: "A pleading may state as a cross-claim any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein." Absent the filing of a cross-claim the rights of the defendants inter sese would not have been adjudicated because ordinarily a judgment in favor of a plaintiff does not determine the relative rights or liabilities of codefendants unless their hostile or conflicting claims are actually brought into issue by pleadings and are litigated and determined. Missouri District Telegraph Co. v. Southwestern Bell Tel. Co., 336 Mo. 453, 79 S.W.2d 257, 259 [2]; Missouri District Tel. Co. v. Southwestern Bell Tel. Co., 338 Mo. 692, 93 S.W.2d 19, 23 [10]; Scheer v. Trust Company of St. Louis, 330 Mo. 149, 49 S.W.2d 135, 143 [10]; Charles v. White, 214 Mo. 187, 112 S.W. 545, 550 [7], 21 L.R.A.,N.S., 481; 49 C.J.S. Judgments § 440(c), p. 872; 50 C.J.S. Judgments § 819, p. 372; 30A Am.Jur. 466, Judgments § 411.

 In this case there is no claim of error in pleading, proof or submission of the issues. The verdict is responsive to the issues made by the pleadings and submitted in the instructions. Ordinarily a general verdict is conclusive as to questions of fact properly submitted to the jury. Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842, 847 [6]. Neither the plaintiff nor the cross-claim defendant has any priority or pre-emptive right to particular evidence or inferences to be drawn therefrom. If we adhere to a rule of consistency in this situation the alternatives would be to separate the trials and permit to be done indirectly that which is unseemly if done directly; or to retry the joined causes repeatedly until a verdict is returned which is acceptable to the court's view of consistency. We see no valid reason to foster such a dilemma by engrafting upon the

joinder statute the rule applied in the McGuire case.

A similar contention presented in Brown v. Parker, 217 Ark. 700, 233 S.W.2d 64, 65 [1, 2], was disposed of in this manner: "The answer to this argument must be that the law imposes no requirement of consistency upon jurors hearing separate cases which are consolidated for purposes of trial. If such separate cases were being tried separately, by different juries, there would be no assurance of consistency in the verdicts, and no greater assurance of consistency is insisted upon when one jury tries both cases together."

Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 9, § 5903, page 375, similarly states the rule in this way: "Inconsistency in verdicts in actions tried together is not a ground for setting aside the judgment in one of the actions on appeal unless such judgment is based on error." See also McCoy v. Gaddes, 3 Cir., 88 F.2d 480; Navarro v. Mayo, 81 U.S.App.D.C. 34, 154 F.2d 313; Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430; Green v. West Memphis Lumber Co., 192 Ark. 1177, 91 S.W.2d 261; Leech v. Missouri Pac. R. Co., 189 Ark. 161, 71 S.W.2d 467; Nashville, C. & St. L. Ry. v. White, 158 Tenn. 407, 15 S.W.2d 1; 89 C.J.S. Trial § 500, p. 165.

If the same general verdicts had been returned in separate trials of plaintiff's action and defendant Crowe's cross-claim under the instructions before us, there could not be any legal inconsistency; that is, no inconsistency justifying setting either or both of the verdicts aside. We believe it is the intent and purpose of section 509.460 to permit to be done in one trial that which could be accomplished in separate trials. This does not deprive the court, on its own or a party's motion, ordering separate trials in proper cases. There was no such motion or objection to the submission in the present case. We believe the better rule to be that where separate causes of actions are joined under the permissive authority of section 509.460 and tried together, a general verdict will not be held to be fatally defective for inconsistency unless there is error in the pleading, proof or submission of the actions. The McGuire case, to the extent that it is contrary to our holdings herein, should no longer be followed.

The remaining question is whether the verdict is so excessive as to require the grant of a new trial or a substantial remittitur. The plaintiff was thirty years old, married, and the mother of one child, a boy ten years of age. She had a life expectancy of 36.88 years. She was thrown from the Hamilton automobile by the force of the collision, and rendered unconscious. She regained consciousness in the St. Louis City Hospital on Wednesday following the accident which occurred on Sunday. Two of the doctors who treated her, Dr. Warren Stamp and Dr. Alvin C. Schopp, both orthopedists practicing in St. Louis, testified on behalf of plaintiff. In general the medical testimony tended to show that as a result of the accident the plaintiff suffered a fracture of the lamina of the second cervical vertebra, a traumatic laceration of her face and ear leaving scars, multiple abrasions and injury to the right forehead at the outer edges with a suggestion of a depression of the frontal bone and a low back injury. The X-ray photographs showed a narrowing between the fifth lumbar and the first sacral segment. The plaintiff suffers pains radiating from her left hip down into her lower left leg. One doctor suspected a ruptured disc but it was not definitely demonstrated.

Part of the treatment for the fracture of the cervical vertebra consisted of traction applied for a period of twenty-four days in order to keep the broken bones in place during healing. The plaintiff's head was shaved, holes were drilled in her skull and Crutchfield tongs were inserted in order to apply fifteen to twenty pounds pressure which is greater traction than could be tol-

erated by a halter on the head and under the chin. She was also placed in a Strycker frame during this time in order to keep her neck immobile. She was then placed in a Minerva Jacket which consisted of a full-body cast extending from the top of her head to her hips. She was in the cast for two months and wore a collar for two months additional. The plaintiff testified that she suffered headaches frequently, pains in her neck and in her back. The doctors testified that her injuries were permanent and that she would continue to suffer pain.

Prior to the accident the plaintiff worked for a cosmetic firm and earned $35 per week. She has not been able to work since the accident and could not likely do so in the future. At the time of trial her loss of earnings was $2,100 and hospital and medical expenses $1,075. There was testimony that the plaintiff will require future medical treatment and may develop arthritis by reason of the injury to her bones and joints. There was further evidence of injury and suffering but the above is sufficient to outline the nature of plaintiff's injuries and the damage she is likely to suffer in the future.

The defendants offered no evidence to contradict the nature and extent of the plaintiff's injuries or the amount of her pecuniary damages. The court must consider the evidence of damages in the light most favorable to the plaintiff and indulge in the presumption of right action of the jury in assessing plaintiff's damages and of the trial court in approving the award. Wood v. St. Louis Public Service Co., Mo., 228 S.W.2d 665, 17 A.L.R.2d 868. Under all the evidence we cannot say that the damages awarded by the jury are excessive. The trial court did not err in refusing to grant a new trial on the issue of damages or to require a remittitur.

The order of the trial court granting a new trial to all parties on the issue of liability is reversed and the cause is remanded with directions to reinstate the verdict and judgment in favor of plaintiff against both defendants on her cause of action and in favor of the defendant Crowe on his cross-claim against the defendant Hamilton.

All concur.